Our final argued case this morning is Link v. Samsung, 2023-2346. Mr. Schreiner, again. Good morning, Your Honors. I'm Steve Schreiner, here to address the Board's decision in the IPR involving the 400 patent. This appeal involves three discrete issues of claim construction and one issue of statutory construction. I know there's a lot of interest in the printed publication issue. Let me address that first. Yes, Your Honor. Counsel, the issue with respect to some of the claims clearly relates to whether Martin is a printed publication. Yes, Your Honor. And that apparently is in accordance with recent patent office practice. Why should we overturn an established practice? It's plausible. It's rational. The province of the court is to interpret the statute and not defer to PTO practice or even PTO agency interpretation. We don't have agency interpretation here. We have no regulations set forth by the office indicating that this type of 102E1R is within the ambit of printed publications under Section 311B. Let's look at the statute. Does the statute under 311B, does the reference to printed publications not include a published patent application? It does not include a published patent application that was not published before the critical date of the patent at issue pursuant to the long-standing judicial... We're looking at the statutory language. It's a printed publication. Is it not a printed publication? It's printed and it's published. How is printed publication? The second question may be what's the date that we associate with that, which is answered in another portion. But as to whether or not it fits printed publication, are you really disputing that? A published patent application is a printed publication as of some date. Exactly. So all printed publications have a certain priority date. The other part of the statute refers to 102, which includes 102E, which establishes what, with respect to printed publications, is the appropriate filing date as prior art, right? So that's the way I come together by suggesting the statute is, I can't say 100% clear, but pretty clear on its face. I respectfully submit that the statute is clear on its face, but what Your Honor is proposing is that printed publication under section 311B has a different meaning than printed publication under section 102. And we know that the case law tells us there's a presumption that the same term used in a statute in multiple places means the same thing. And we know also that our interpretation of a statute is guided by established judicial construction. And we have over nearly 150 years of established judicial construction that a prior art printed publication means a reference that was publicly available before the critical date of the patent. Well, until 1999 in the statute, there was not a published, a publication requirement came in under section 122. So if you agree, as I think you have, that published applications do constitute printed publications, they come under that umbrella, then why isn't the question then, and does the statute in any way dictate that certain printed publications have some certain treatment with respect to the filing date and others have a different treatment? Why is that? Because E2 does call, E1 does call out published applications. Your Honor referenced the AIPA of 1999. The AIPA of 1999 first created 102E1 type prior art, and it also introduced inter-parties re-examination. So Congress had the opportunity at that point to change the language governing what types of categories of prior art can be used in these post-grant proceedings. Congress did not change the language. It left the language as prior art consisting of patents or printed publications. If Congress wanted to introduce and include the newly created 102E category of prior art, it would have done so. I thought you had agreed with me that published applications do constitute prior art. I mean, do constitute printed publications. They're printed and they're published. You're saying that printed publications includes everything other than published applications? No, I'm not saying that at all. Printed publication is a reference that is publicly accessible before the critical date of the patent at issue. And that printed publication can be an article or it could be a published patent application. In the case of a published patent application, it is only a printed publication pursuant to the established judicial construction. It's only a prior art printed publication if it was availed publicly accessible before the critical date of the patent. I understand your comment. And we've got a lot because all of our cases preceding 99, 99% of our printed publication cases deal with books, accessible library. And those certainly have these requirements you state that when it was available to the public. But there's nothing inherent, and again, in Congress's inclusion of a printed publication to include published applications. And if that's true, why does the law or the statutory language preclude a different filing date under 102, which is also referenced in 311B, to apply that? That's the law too. I mean, we're dealing with combining two statutory provisions. Section 311B, I think, can fairly be characterized as a filter. It identifies certain categories of prior art that can be considered in IPRs. Section 102 sets forth these various categories of prior art, such as on sale, in public use. But don't we all agree that the legislative history here was pretty focused and the reason for including the term printed publications was to include evidentiary issues that belong better in the district court, right? I mean, that's the whole history. I'm not sure I followed the question. The idea is to channel documentary challenges to the board and keep the non-documentary defenses to district court, right? I understand that. That was the intent and that's the structure. You would agree with that? No, respectfully not. That was not the intent. There's no evidence in the legislative history of the AIA or the AIPA that the language prior art patents or printed publications encompasses all, quote, unquote, document-based prior art. We know from your decision in Qualcomm that, for example, AAPA in the patent, which is document-based prior art, is not a permissible basis in an IPR because it is not a prior art patent or a prior art printed publication. We know that, for example, you can have on sales where there's a written offer for contract accompanied by a specification and that's document-based, but we know that that would not be permissible in an IPR because that is on sale prior art. It is not a prior art printed publication or prior art patent. If we were to adopt your view of the statute, it's a practical matter. Does that mean that the petitioner would bifurcate various grounds for obviousness and the grounds that include an application and they require the prior art date to go with the application filing, they could pursue those in district court and they could pursue the others? There wouldn't be an estoppel there because, under your view, you're not allowed to bring that before the board. Is that the way the system would work in your view? That you would bifurcate? First, if a published application was not prior art as of the date of filing of the petition, then it could not have reasonably been raised and so it's not subject to 315 E2 estoppel. That's the answer to that question. Second question about the differential treatment of these proceedings, these obviousness challenges before the board and before the district court, that's baked into the statute. The statute says that IPRs can only be conducted based on these certain categories of prior art. It's baked into the statute that the district court proceeding can handle other obviousness type challenges based on on sale, in public use, public knowledge, et cetera. But as Judge Stark pointed out earlier, there's clearly a suggestion in Congress in the statutory legislative history, there was a reason for that. The reason was because district courts are better shaped to handle evidentiary issues. Doesn't seem like this filing date question belongs in that box. I think at the end of the day, we can speculate what Congress's intent was. We can hypothesize what Congress's intent should have been. We can speculate about what would be the best policy and how would be the best way to go about it. But here, where we've got statutory language and a structure in the AIA, which is clear and it's linked to long established judicial construction of printed publications. And you're saying that this isn't a 102e situation where a patent, a later issuing patent is given a prior art status as of its filing date. This isn't a patent. This is arguably a patent application being asserted to be a printed publication. Yes, Your Honor. If this reference, the Martin reference here, had actually matured into a patent instead of being abandoned, then it would qualify. But you would also say that even as it was published, it could get the filing date of the publication, right? It would be entitled to the publication date for purposes of IPRs and it would be deemed prior art if that publication date was prior to the priority date of the patent, which of course is not the case here where the Martin reference is indisputably published after the priority date of the 400 patent. But if Martin had matured eventually into an issued patent, it would get the date. It would become prior art as of its date of filing, correct? Yes, we agree that because it falls under the category of patent, then it falls within the ambit of 311b. But here, this reference, this Martin reference, did not mature into a patent. So the question is under 311b, is it a prior art patent or is it a prior art publication? Well, we know it can't be a prior art patent. So the question is, is it a prior art publication? And that takes us back to the longstanding judicial construction of that term. We're into your bottle time. You wish to save it or continue? I think I'd better save it. All right. Thank you. Mr. Mody, you're going to take 13 minutes and then we'll hear from the Patent Office. Thank you, Your Honor. Good morning. May it please the Court. So I'll jump right into the Martin issue. Can I ask you a question about that? Your friend seems to rest on what seems to have an argument that may have some heft, which is that printed publications, the touchstone, the soil that comes with the term printed publications requires public accessibility. And therefore, why are we saying that a printed publication here, the printed application, gets the prior art filing date before it was publicly accessible? So, Your Honor, it goes back to the statute. We obviously disagree with them. I think if you look at Section 311, as you were pointing out earlier, it defines, it refers to printed publication. And that's just referring to merely a category of prior art, right? And they all even admit that applications are published. They are a printed publication. So really the question here for the Court is, what is the effective date of that publication? And I think Section 35 U.S.C. 102e1 gives us that answer. And so from our perspective— That's only with respect to a patent. So, Your Honor, with respect to the patent, it would be 102e2, right? And with respect to the application, it would be 102e1. And I think that actually supports our argument because they're— 102e1, you say? Exactly, Your Honor. And I think that supports our argument. I apologize. I flipped the two. I think that supports our argument because they agree that Section for patents, it is prior art under Section 102e1 as of its filing date. But they, of course, say that it's not with respect to the publications, right? So, and we think Congress certainly didn't intend that result. And in fact, if you were to— We believe the statute is clear, and that ends the inquiry here. Because really, again, the issue is, are patent applications, published applications, printed publications? They clearly are. And Section 102e1 tells us the priority date, right, for those patent applications, as Your Honor pointed out. That says, published by another, filed in the United States before the invention for the applicant, the patent. That's correct. This was published afterwards. So, Your Honor, if you look at Section 102e2, as you pointed out, what it tells us is that in that scenario, when it's published after, right, the effective filing date is the filing date of the patent application. But 102e relates to a patent. 102, so if you look at 102, 102e2 relates to a patent. Right, right, Your Honor. This is not that case. So, right, and here we're talking about 102e1. And from our perspective, again, the statute makes clear that you look at, it says, prior art consisting of patents and printed publications, right, pursuant to Section 102. And as Judge Pruitt— Yes, the language in 102e is confusing. It is. I don't understand, and your friend can correct me if I'm wrong, but there's, that parties dispute the meaning of that, which is that the application will get, the date of the application is the prior art date. And I think, Your Honor, where we should look at is the case law. And, of course, Congress's intent here. And I think, Judge Loring, you pointed to this, too. There's established patent office practice here. We do think, you know, I want to go back and I want to make it crystal clear. Our position is the statute does make it clear, right, under Section 1, both under 102e1 and 102e2, whether it's a patent or a printed publication, the effective date, effective prior art date is the filing date, right? How about with respect to a CBM? That's explicit, isn't it? It is explicit. So, if in the very same statutory enactment, Congress made it explicit for a CBM, the fact that it didn't here tells us something. And I think it actually supports that, Your Honor. In this case, Congress knew what it was doing, and I think this goes back to Judge Post, what you were saying, and Judge Stark, a little bit of what you were saying. You have to look at this statute in the context of how this came about, right? This concept of using printed publications goes back to 1980s when the ex parte re-exam statute was constructed. Congress used a broad term. It said printed publication at that time, and it really was directed to precisely what Your Honor is pointing to, that you wanted to have printed art available for re-examination because the other types of art, public use and public sale were evidentiary issues, so that was really not in the purview of the Patent Office. And then you have the AIPA comes in place, Judge Post, as you pointed out, and that makes patent applications publications, right? And when you look at that context, and after that, you have the PTO for over 20 years. The PTO, the board, the courts have interpreted both the AIPA and Section 102E and Section 301 or 311 to basically say, yes, you can use printed patent applications under Section 102E1 as prior art. If we disagree, the PTO can go to Congress and plug up the hole, right? Certainly, Your Honor, they can, but I do believe here that you do have enough, again, if you start with the statute, it's clear. Do you agree that printed publications encompasses two things, at least with respect to the priority dates, right? Because if it's a publication, it's as if the data became publicly accessible. So I agree, Your Honor, that even a patent application that's published can have two different dates from a priority perspective. It can have a date under Section 102A or B, and it can also have a date under 102E. I think perhaps what you're getting at is, and I think you're right, the case law that they're pointing to, it all goes to non-patent application prior art, right? It goes to articles, it goes to thesis. And in those cases, this Court has time and again said, it is a public accessibility issue, but when you have patent applications that are printed publications, it is Section 102E that tells us the answer. And in that respect, since we're dealing with, it follows what it's done with respect to patents, as Judge Stark pointed out, that you go back to the date of the filing of the application. Exactly, precisely, Your Honor. And Congress could not have been more clear, and I'll point you to some of the legislative history that's also discussed in the briefs. If this Court had any doubt, again, we believe this question is simple, the statute answers it. But if you had any doubt, for example, if you look at the House report, this is for the AIPA, it's 106-287 at 56. In amending Section 102E to add published patent applications, the House report stated Congress intended to, quote, to treat an application published by the PTO in the same fashion as a patent published by the PTO. We think that that shows Congress's intent that when it put in printed publications, applications into place, it was intending that they would be used in the same fashion as patents would be. But you are not, it is not your position that an application that is never published or not published in a certain time is entitled to anything. Completely agree, Your Honor. That's a different issue, and that's not before you today. What's your view on estoppel? Do you agree with your friend that if we were to agree with the way the Board has interpreted the statute, it would essentially, well, would it have an impact on estoppel? So, agree, Your Honor. I believe it would have an impact on estoppel. It probably wouldn't be stopped in those instances, right? Because you could not have raised that prior art, such as Martin, in that instance. And I've confused myself. If we were to agree with Link's position, which is contrary to the Board, then it would be sort of narrowing the estoppel provision, and it would, at least as a policy and practical matter, it would undermine some of the efficiencies that it appears Congress may have intended to achieve with IPRs. Is that right? Completely agree, Your Honor. And it's completely at odds with what we know to be Congress's intent in defining printed publications to take one group of stuff out because it belonged in the district court because of evidentiary reasons. This aspect of it doesn't fit within that, right? Completely agree, Your Honor. And I think what you have to look at is, and you both make the point, which is from a policy perspective, right, if you kind of move down sort of the statutory interpretation route, this would be bad policy, right? Because of precisely what you pointed out. That's not, we got to stick to the statutory language. I don't think Justice Gorsuch would appreciate it. Right. No, and Your Honor, my point is that... Are there any kinds of publications other than patents that are given the benefit of 102E, are there any other kinds of publications that are given prior art status as of a date other than when they're published, like when they were submitted to a journal? So, Your Honor, I believe the, I don't believe so other than, for example, if you were able to show when they became publicly accessible. So, right, it really goes to, and that's why I think in this case, it's not disputed that these are printed publications. It just goes back to the effective date. The question, when? As of when? Exactly. And I think section 102E tells us, gives us that answer. 102E1 says before, before the invention. That's right, Your Honor. And so, and if you go back to look at section 102, right, what it says is the invention was described in court one, an application for patent published under section 102 by another filed in the United States before the invention, right? And it parallels section 102E2, Judge Lurie, and maybe this is the point you're getting at. I just want to make sure that I understand your question. Because remember, before we had a 102E1, it was just 102E2, right? Which was just a patent. And it's been longstanding, going back to Supreme Court case law, that when a patent is filed, right, and it issues as a patent, the effective filing date for that patent is its filing date. It should be no different. The answer should be no different from a published application such as Martin under section 102E1. I hope I addressed Your Honor's question. You addressed it, yes. Language in E is not crystal, it's none of it. I mean, none of the 102 language, it all sort of does the same sort of weird description. Your Honor, I certainly... I think it's disputed that interpretation, right, of 102E1. Exactly, exactly. I think it's not disputed that that's how 102E has been applied for, you know, forever. And I just want to go back to... Well, how could it be forever? Since it was enacted. Fair enough. Since the system was enacted. And I'll just end with that the USPTO... Judge Lori, I think you started with this, and I want to make sure I get APTO sometime as well. Since the statute was enacted, right, if you look at... I'm going back to now, AIPA, right, 1999. The USPTO has interpreted this provision as including printed applications, right, that are available for re-exams and IPRs. And of course, Congress has assumed when it legislates, it's presumed to be aware of administrative and interpretation of the statute. So from our perspective... Well, that almost sounds like Chevron. So we're not relying on Chevron. We understand, obviously, Chevron is history. But if you do go back to even the Loper case, it does say that the court can look at, it should pay due respect. It's certainly persuasive. But again, from our perspective... That's Skidmore. Sorry, Your Honor. Skidmore. Sure, Your Honor. And from our perspective, again, the statute is clear and this court should affirm on that basis. All right. Let's hear from the Patent Office. Thank you. May it please the Court. The issue I see with Link's argument is that they're ignoring the fact that 311B imposes two separate requirements on a reference to be used in an IPR. It both has to be prior art and then it has to be either a patent or a printed publication. And there's no dispute here that a published patent application is a printed publication. And the question becomes, when did it become prior art? And the answer is in 102E1 that it becomes prior art as of its filing date. And I think if you look at it that way, the statute makes sense. And... But as I asked Mr. Nadine... Which? Anybody... It all brings with it its soil. And if you look at printed publications, historically, the whole point of printed publications was to make them available at prior art at the time they're accessible to the public. So you acknowledge that this is a different, a variation of what is historically viewed as a printed publication. Correct. This is different than the non-patent document cases where the question is, we don't even know if it was made accessible to the relevant public. I mean, if something was presented at a conference or in a library in Germany, you have to decide if that's even quote, unquote, publicly accessible. Here, there's no question... Applications were not printed publications before 1999, right? Because they weren't published. There wasn't the requirement for publication. Correct. We're not asserting that non-published... We agree that non-published applications do not fit in 311B. The point is that there's no question that a published patent application is publicly accessible. The agency publishes those applications through its website, and they're accessible to everyone, especially patent examiners. The question then becomes, what is the effective prior art date? In the non-patent document case, those questions come together into one because the question is, when it's publicly accessible and when it's prior art, it's the same date. But here, we have a special rule for published patent applications that's reflected in 102E, and so that is the difference. And the similar rule, an analogous rule, applies to patents themselves. Correct. Well, patents themselves, that goes back to 102E. That's almost forever. But 102E1, which we're relying on, says published by another before the invention by the applicant for patent. So that goes on to our facts here because this was published after. I think you need the key language in 102E1 is filed in the United States. So it's keying the prior art effect based on the filing date. So if it's filed by another in the United States before the invention, then it's prior art. So you read before the invention as modifying filed and not published. Correct. Any final thoughts? I would just say that this would go, that ruling in Link's favor would go against the policies and intent behind both the re-exam statute and the IPR statute. And I think that's made clear, and I think that this court has held so in Qualcomm and Quad Environmental. Thank you. Thank you. Mr. Schreiner has some rebuttal time. Yes, Your Honor. Tell us what 102E1 means. What 102E1 expresses that is that a patent application that publishes under 122B is effective as prior art as of its filing date, if that was before. As of the filing date of the application. That's right. That's 102E1, which again are... So you agree with the other side? I mean, there's no... No, absolutely not. This all goes back to the basic question. The fact that the PTO and Samsung are taking the position that printed publication under 311E... My only question was about 102E. So you agree with the way they read in the patent office reads 102E is allowing printed applications to go back to the filing date of the original application. 102E1, we agree with that interpretation. Now the patent office just... The PTO just mentioned the intent and the history. If we look at these statutes, the re-examination statute in 1980, there's no legislative history reflecting an attempt to encompass these types of published applications because that category of prior art did not exist. In the AIPA in 1999, there's no legislative history indicating that Congress implicitly rewrote that very same language, prior art consisting of patents or printed publications to mysteriously include the newly created prior art category 102E1. And then with the AIPA in 2011, there's no legislative history there at all. But in 122 in the 1999 Act, for the first time... Maybe I'm wrong. My understanding is for the first time, they required publication of patent applications. So prior to that, they didn't constitute printed publications. But after the act, they did, right? And correct. And they created 102E1 codifying that. But what Congress did not do, Congress elected not to modify this statute defining the types of prior art that could be permitted in these post-grant proceedings. Congress maintained the same language, prior art consisting of patents or printed publications. If Congress wanted to include the newly created prior art category 102E1, it would have done so, but Congress didn't. And so what we have is almost 45 years of history, spanning from 1980 to the passage of the AIPA in 2011, continuing to use that same statutory language over the course of nearly 45 years. And we know also from the Helsin case that with regard to the passage of the AIA, if there is a previously established judicial construction of the term printed publication, then it's presumed that that's also incorporated into the new legislation that is reenacted using that very same language. My friend from Samsung mentioned the legislative history of the AIPA. The legislative history of the AIPA doesn't even use the word printed publication. Secondly, or thirdly, let me refer to section 901.02 of the MPEP. This is cited in Link's brief at page 31 through 32, Link's reply brief. In section 901.02, this is a section of the MPEP from 2001 that the PTO cited in favor of its argument. Now what section 901.02 is it recognizes published patent applications as being printed publications as of their publication date. And I'll read you the language. If an abandoned application was previously published under 35 U.S.C. 102B, that patent application publication is available as prior art under 35 U.S.C. 102A and 102B as of its patent application publication date because the patent application publication is considered to be a printed publication within the meaning of section 102A and 102B. So the MPEP, which the PTO cites as alleged agency practice and so forth, the one place where it grapples with this issue of published patent applications, it says that they are prior art as a printed publication as of their publication date. Well, no, but I actually didn't think that that was disputed because they're not, I mean, that's why we had 122, that printed publications don't consist of applications that never resulted in a printed application. Yeah, the point was just that the PTO pointed to the 2001 MPEP on this issue as alleged agency practice and nowhere in those sections of the MPEP pointed out by the PTO does it actually grapple with the issue of whether 102E1 type prior art is a printed publication within the ambit of the statutory language prior art printed publications, I'm sorry, prior art patents or printed publications. And I'd also like to add very quickly that the notion forwarded by the PTO and Samsung that the determination of whether something's a prior art publication is actually a two-step inquiry where first you determine, okay, is it a printed publication as of any time? And then if the answer is yes, then you get to go hunt under section 102 for any category of prior art. And if it's a prior art under any of those categories, then it's a prior art printed publication. Thank you, counsel. Your time has been exceeded. We have your case and the case is submitted. Thank you very much.